# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

DONALD P. MCCONNELL,  :

          Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.  :

Case No. 3:11-cv-020

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial

gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on August 20, 2004, alleging disability from April 30, 2004, due to schizophrenia, chronic back and neck pain, anxiety disorder, high blood pressure, ADD, and panic disorder. (Tr. 66-68; 78). The Commissioner denied Plaintiff's application initially and on reconsideration. (Tr. 37-40; 42-44). Administrative Law Judge Thomas McNichols held a hearing, (Tr. 684-724), and a supplemental hearing, (Tr. 649-83), following which he determined that Plaintiff is not disabled. (Tr. 18-31). The Appeals Council denied Plaintiff's request for review, (Tr. 6-8), and Judge McNichols' decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge McNichols found that he met the insured status requirement of the Act through June 30, 2008. (Tr. 20, ¶ 1). Judge McNichols also

found that through his date last insured, Plaintiff had severe chronic neck and low back pain, obesity, bipolar disorder, and an intermittent explosive disorder, but that he did not have an impairment or combination of impairments that met or equaled the Listings. (Tr. 20, ¶ 3; Tr. 21, ¶ 4). Judge McNichols found further that prior to the expiration of his insured status, Plaintiff had the residual functional capacity to perform a limited range of medium work. (Tr. 23, ¶ 5). Judge McNichols then used section 203.26 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 30, ¶ 10; Tr. 31).

In his Statement of Errors, Plaintiff challenges the Commissioner's findings with respect to his alleged mental impairment. (Doc. 12). Accordingly, the Court will focus its review of the record on the mental health evidence.

The record contains Plaintiff's mental health treatment notes from Daymont dated January 16, 2004, through March 23, 2006. (Tr. 415-91). Those records reveal that when Plaintiff was first evaluated in January, 2004, it was noted that he was seeking treatment for compulsions and depression, his mood was calm, his affect was restricted, he was cooperative, and that he complained of anxiety, poor concentration and memory, crying spells, irritability, and panic attacks, and that he intended to apply for Social Security benefits. *Id.* Plaintiff's diagnoses were identified as major depressive disorder, moderate, rule out obsessive compulsive disorder, mild, and rule out generalized anxiety disorder; he was assigned a GAF of 55. *Id.*

Plaintiff continued to receive mental health treatment at Daymont and Dr. Kuruvilla, a psychiatrist, prescribed medication. *Id.* Plaintiff's counseling sessions focused on his compulsive behaviors, relationship problems, and overeating. *Id.*

4

In March, 2004, Plaintiff contacted psychologist Dr. Mills, a supervisor at Daymont, and requested a transfer of therapists. *Id.* Dr. Mills noted that Plaintiff thought that his current therapist did not demonstrate sufficient knowledge of his clinical concerns and that she had been insensitive. *Id.* In March 2005 Plaintiff again contacted Dr. Mills to request a change of therapists. *Id.* Dr. Mills noted that Plaintiff had been seen by two other therapists in the past and that his current therapist felt that Plaintiff was trying to find someone to agree with his desire to apply for disability. *Id.* Plaintiff then began seeing therapist Mr. Stanchina and continued to see a psychiatrist. *Id.*

Examining psychologist Dr. Flexman noted in March, 2005, that Plaintiff reported his relationship with his girlfriend was good, he got along well with others, he socialized with family, his emotional state was variable, and that his temper was irritable, and he was slightly obese. (Tr. 241-44). Dr. Flexman also noted that Plaintiff was seeing a psychiatrist every two months, attended counseling every other week for ADD issues, he prepared food throughout the day, did the dishes, laundry, dusting, cleaning, mopping, and general straightening up around the house, shopped, went to thrift stores, attended sporting activities, concerts, and his child's activities, played pool and video games, went hiking, out to eat, to the movies, and played basketball at the recreation center. *Id.* Dr. Flexman reported that Plaintiff's posture was relaxed, his facial expressions and general body movements were within normal limits, a press of speech was evident, he rambled on when speaking, his affect was dramatic, expansive, and embellished, his attitude was indifferent and impulsive, and he was oriented and alert. *Id.* Dr. Flexman also noted that Plaintiff's attention span was fair, his effort and concentration were good, his intellectual functioning was judged to be average, his memory was good, his judgment was good, and obsessive thinking concerning somatic

5

or other psychological problems was judged to be out of proportion with reality. *Id.* Dr. Flexman identified Plaintiff's diagnosis as attention deficit hyperactive disorder and he assigned Plaintiff a GAF of 55. *Id.* Dr. Flexman opined that Plaintiff was slightly impaired in his abilities to understand and remember and carry out short, simple instructions, to make judgments for simple work-related decisions, to attend, and to concentrate and he was moderately impaired in his abilities to interact with others and respond appropriately to work pressures in a normal work setting. *Id.*

The record contains hospital notes dated December 27-28, 2005, which reveal that Plaintiff sought emergency room treatment for various complaints including suicidal ideation and depression without sleep for the past three and one-half days, that he wanted "to speak to a doctor, and want[ed] to be 'listened to this time'", that he had an intent to harm himself, and that he was "pink-slipped" in the emergency room and admitted for observation with the diagnoses of suicidal ideation, bipolar disorder, and depression. (Tr. 346-67). Those notes also reveal that when Plaintiff was admitted, the evaluating mental health specialist reported that Plaintiff stated that he was there "because of a lot of psychiatrists who are ignorant", that he did "call his lawyer who is taking care of his disability case to let her know that he was in the hospital", that he would stay up for a period of several days and then "crash and burn", and that he had racing thoughts, crying spells, increased eating, increased cleaning, and would shower five times a day and brush his teeth for twenty minutes. *Id.* The evaluating mental health specialist also reported that Plaintiff's history seemed to contradict itself, he seemed to endorse narcissistic traits, he had an eighth grade education, he stated that the psychiatrists he has been seeing including Dr. Pasha and Dr. Kuruvilla "do not know what they are talking about", he was very dramatic in his affect, and that he endorsed a depressed mood, feelings of guilt and worthlessness, decreased concentration, increased appetite, and

6

symptoms of grandiosity. *Id.* The mental health specialist noted that Plaintiff stated that he had reported "fleeting thoughts of suicidality because he would never have gotten admitted just because he could not sleep for a couple of days." *Id.* Plaintiff's diagnoses were identified as depression NOS and histrionic and narcissistic borderline personality traits and he was assigned a GAF of 50. *Id.* Plaintiff was given medication and discharged. *Id.*

On March 31, 2006, Plaintiff's mental health counselor, Mr. Stanchina, reported that Plaintiff had been receiving treatment since January 16, 2004; he (Mr. Stanchina) treated Plaintiff once a month; his diagnosis was bipolar disorder; his current GAF was 64; his highest GAF in the past year was 55; and his prognosis was fair. (Tr. 492-97). Mr. Stanchina also reported that Plaintiff displayed several abnormal signs and symptoms, and that he was severely limited in several of his mental abilities needed to perform work activities, and was even unable to meet competitive standards in certain areas. *Id.* Mr. Stanchina essentially opined that Plaintiff is disabled. *Id.*

Plaintiff sought emergency room treatment on August 23, 2006, for complaints of sleeplessness for three days, increased irritability, intermittent and vague suicidal ideations for the past few days, and increased panic attacks. (Tr. 508-25). Plaintiff reported that he had taken Xanax before coming to the hospital and that he didn't feel suicidal "'right now because of the Xanax but that nurse should 'write down that he is so he isn't just sent home' because he has a [history] of 'being violent'". *Id.* It was noted that Plaintiff had not taken his medication for several weeks because he was unable to afford it, that he had missed his last two appointments with his psychiatrist, he was alert and oriented, his mood was anxious, his affect was broad, his speech and thought processes were unremarkable, and that he denied suicidal ideation. *Id.* Plaintiff's diagnosis was identified as bipolar disorder and he was discharged to the LifeWell Program for outpatient

7

services. *Id.*

The record contains a copy of treating physician Dr. Yang's office notes dated August 21, 2006, through February 8, 2008. (Tr. 546-59; 617-21). Those notes reveal that Dr. Yang treated Plaintiff for various medical complaints and conditions and, over time, prescribed, *inter alia*, Xanax for Plaintiff. *Id.*

Plaintiff continued to attend counseling with Mr. Stanchina during the period January through June 2008. (Tr. 560-70; 622-27; 640-46). Mr. Stanchina's treatment notes reveal that the focus of Plaintiff's therapy was Plaintiff's anger with his son's mother's drug use, his efforts to gain custody of his seven year-old son, his depression associated with the Christmas holidays, his obesity, and improving his health. *Id.* Mr. Stanchina noted in August, 2007, that Plaintiff had obtained custody of his son and in October 2007 he noted that Plaintiff reported that his moods were more stable than at any time he (Plaintiff) could remember. *Id.*

Examining psychologist Dr. Kramer reported on May 5, 2008, that Plaintiff stated he had a lifelong history of serious emotional, social, and behavioral problems, he lived with his eleven year-old son, attended school until the ninth grade, complained that he could not handle his own financial matters because of his impulsivity during manic episodes, was first involved in psychiatric treatment when he was about thirteen years-old, has been hospitalized on two occasions, and that he has been involved in outpatient psychiatric treatment for many years. (Tr. 630-39). Dr. Kramer also reported that Plaintiff was obese, adequately oriented although his reality content seemed poor, reported ongoing auditory hallucinations and pervasive paranoid thinking, and that he appeared to be of dull normal intelligence. *Id.* Dr. Kramer noted that Plaintiff's speech was somewhat pressured and rapid, he was somewhat rambling and tangential, came across as having

8

a lifelong history of significant emotional, social, and behavioral problems secondary to his mood swings and active psychotic symptoms, appeared to have a very explosive temper, was spontaneous to the point of being somewhat over productive and pressured in speech, exhibited some thought disorder, and seemed to have some problems with his concentration and focus. *Id.* Dr. Kramer also noted that Plaintiff reported symptoms of a bipolar disorder, reported a history of some panic attacks, showed a good deal of unusual thought content, was oriented, and had poor insight and judgment. *Id.* Dr. Kramer identified Plaintiff's diagnoses as schizoaffective disorder, bipolar type and intermittent explosive disorder and he assigned Plaintiff a GAF of 48. *Id.* Dr. Kramer opined that Plaintiff's abilities to interact with others, to maintain attention and concentration, and to withstand the stress and pressures associated with day-to-day work activities are extremely impaired and that his ability to understand, remember, and follow instructions was moderately impaired, and that Plaintiff was not capable of handling any benefits in his own best interest. *Id.*

The medical advisor (MA), who is a psychologist, testified at the hearing that Plaintiff was limited to simple, maybe some detailed but more likely simple, work with no production quotas or time standards and work that does not involve dealing with the public or close supervision or close interaction with coworkers. (Tr. 667-77). The MA also testified that Plaintiff did not meet or equal the Listings, the level of care he was receiving was not intensive treatment, and that the treatment record did not support Plaintiff's subjective complaints or Dr. Kramer's conclusions. *Id.*

In his Statement of Errors, Plaintiff alleges that the Commissioner erred by giving controlling weight to the MA's opinion, by relying on the VE's testimony because it was in response to an improper hypothetical question, and by finding that he is not entirely credible. (Doc. 12).

9

In support of his first Error, Plaintiff essentially argues that the Commissioner erred by failing to properly apply the treating physician rule and therefore improperly weighed the evidence.

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406*, quoting, Wilson,* 378 F.3d at 544*.* "On the other hand, a Social Security Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and

---

FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

10

laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 582 F.3d at 406, *citing, Wilson,* 378 F.3d at 544, *citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07, *citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."

*Blakley,* 581 F.3d at 407, *citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an

ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" Blakley, supra, quoting, Rogers v. Commissioner of Social Security., 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

In rejecting Mr. Stanchina's opinion as to Plaintiff's limitations, Judge McNichols first reviewed, in detail, Plaintiff's treatment history. (Tr. 21-29). Judge McNichols then noted that Mr. Stanchina's opinion was internally inconsistent, not supported by his treatment notes, and inconsistent with other evidence of record. (Tr. 28-29). Judge McNichols noted first that although Mr. Stanchina is a licensed psychologist, he does not hold any degree beyond a Master of Arts. Judge McNichols also noted that Mr. Stanchina's office notes reveal that, as noted above, he saw Plaintiff only about once a month, the counseling was primarily supportive, and that he did not report the degree of distress in his treatment notes that he reported in his March 2006 opinion. (Tr. 29). Judge McNichols noted further that in March 2006, although Mr. Stanchina described Plaintiff's limitations as severe, he assigned Plaintiff a current GAF of 64 which indicates, at worst, "some" difficulty in functioning and a GAF of 55 for the past year, which indicates, at worst, moderate difficulty in functioning. As noted above, this Court's review of Mr. Stanchina's office notes revealed essentially the same information and facts that Judge McNichols reported.

Mr. Stanchina's opinion that Plaintiff's abilities are so impaired that they are inconsistent with an ability to perform work activities is also inconsistent with other evidence of record. For example, examining psychologist Dr. Flexman reported that Plaintiff exhibited few abnormal clinical signs and symptoms, engaged in a wide range of activities, and that he was, at

worst, moderately impaired in his abilities to perform work-related activities. Additionally, the MA opined that Plaintiff did not meet or equal the Listings, and was able to perform at least simple work activity not requiring production quotas or time standards, dealing with the public, close supervision, or interacting with others. Finally, Mr. Stanchina's opinion is inconsistent with the reviewing mental health experts' opinions. See Tr. 249-63.

Under these facts, the Commissioner had an adequate basis for rejecting Mr. Stanchina's opinion that Plaintiff is disabled.

The Commissioner also had an adequate basis for rejecting examining psychologist Dr. Kramer's opinion. In considering Dr. Kramer's opinion, Judge McNichols essentially noted that Dr. Kramer's report and opinion were based on Plaintiff's self-report which differed greatly from the self-report Plaintiff provided to Dr. Flexman. (Tr. 26). The Court notes the self-report that Plaintiff provided to Dr. Kramer also differed significantly from Mr. Stanchina's office notes which reveal that during the period close to the time Dr. Kramer performed his examination, Mr. Stanchina observed few, if any, abnormal clinical finding and that Plaintiff reported he was concerned about his health habits, was positive about the goals he had made in his treatment, and that his moods had been more stable. Finally, in addition to being inconsistent with Dr. Flexman's findings and opinion and Mr. Stanchina's clinical notes, Dr. Kramer's opinion is inconsistent with the other evidence of record including the MA's testimony and the reviewing mental health experts' opinions.

To the extent that Plaintiff claims that his history of hospitalizations for mental health treatment support his claim that he is totally disabled, his argument is not well taken. First, the records of those hospitalizations reveal that Plaintiff's history contradicted itself, he endorsed numerous abnormal behaviors which is inconsistent with the other evidence in the record, and that

13

he intentionally embellished his symptoms so that the mental health care providers at the hospital would admit him and not send him home. Second, the issue, of course, is not whether the evidence supports Plaintiff's allegations of total disability, but rather whether the Commissioner's decision is supported by substantial evidence. See *Richardson,* 401 U.S. at 401.

As noted, the Commissioner did not err by rejecting Mr. Stanchina's nor Dr. Kramer's opinions and instead relying on the MA's opinion as well as Dr. Flexman's and the reviewing mental health experts' opinions.

Plaintiff argues next that the Commissioner erred by relying on the VE's testimony because, Plaintiff contends, it was in response to an improper hypothetical question. Plaintiff's position seems to be that Judge McNichols failed to properly describe to the VE the limitations the MA placed on Plaintiff.

A hypothetical question must accurately portray the claimant's physical and mental impairments. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). If a hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints. *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990); *see also, Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118 (6th Cir. 1994). A hypothetical question need only include those limitations accepted as credible by the ALJ. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1235 (6th Cir. 1993). A vocational expert's response to a hypothetical question that accurately portrays an individual's impairments constitutes substantial evidence for determining whether a disability exists. *Varley*, 820 F.2d at 779-80.

In the hypothetical question that Judge McNichols propounded to the VE, he

included, *inter alia,* "limited contact with co-workers and supervisors and no team work." (Tr. 680). Plaintiff claims that the MA limited Plaintiff to no contact with co-workers. However, the MA testified that she would, "eliminate dealing with the public and the beset [sic] situation is going to be a situation where he can function independently where there's no close supervision, no co-worker because the main area that seems to interfere in a work setting is the contact with others." (Tr. 672).

While the MA testified that the "best" situation for Plaintiff would be for him to have no contact with others, Judge McNichols was not required to include a "no contact" limitation in his hypothetical question to the VE. First, other evidence of record indicates that Plaintiff regularly has contact with others. For example, Dr. Flexman noted that Plaintiff attended sporting events, concerts, and his child's activities, played pool, played basketball at the recreation center, and went out to eat. Additionally, Plaintiff takes care of his young son, interacts with his brother and his girlfriend, talks "a lot" on his cell phone, and sends text messages. (Tr. 659-64). Under these circumstances, it was reasonable for Judge McNichols to include in his hypothetical question to the VE limited contact with co-workers and supervisors and no team work.

Plaintiff's final challenge to the Commissioner's decision is that the Commissioner erred by finding that Plaintiff was not entirely credible.

It is, of course, for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247 (6th Cir. 2007)(citations omitted). An administrative law judge's credibility findings are entitled to considerable deference and should not be lightly discarded. *See, Villarreal v. Secretary of Health and Human Services,* 818 F.2d 461 (6th Cir. 1987); *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230 (6th Cir. 1993). Determination of credibility related to subjective

15

complaints rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant is invaluable and should not be discarded lightly. *Gaffney v. Bowen,* 825 F.2d 98 (6th Cir. 1987).

Judge McNichols essentially determined that Plaintiff's subjective complaints and allegations are not supported by the evidence. (Tr. 27-28). For example, Judge McNichols noted that Plaintiff cares for his young son, drives, cooks, washes dishes, does the laundry, sweeps, mops, and does the shopping. *Id.* Additionally, Judge McNichols noted that although Plaintiff alleged significant problems relating with others, he visits with friends and family, attends church when he feels like it, and reported to Dr. Flexman that he gets along with others. *Id.*

Judge McNichols' conclusions are supported by the record. Specifically, as this Court noted in concluding that the Commissioner had an adequate basis for rejecting Mr. Stanchina's and Dr. Kramer's opinions, Plaintiff's mental health treatment has not been intensive, his counseling has been primarily supportive, and he engages in a wide range of activities. Further, Plaintiff's allegations of total disability are inconsistent with Dr. Flexman's, the MA's and the reviewing experts' findings and opinions as well as with Mr. Stanchina's clinical notes. Finally, Plaintiff's hospital records reveal that Plaintiff both exaggerates and, he admits, intentionally misrepresents his the severity of his symptoms.

Under these circumstances, the Commissioner had an adequate basis for finding that Plaintiff was not entirely credible.

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a

verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

February 8, 2012                                                            s/ **Michael R. Merz**
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).